Our next case this morning is Melnik v. Sessions. Good morning, your honors. May it please the court. My name is Roy L. F. Berg and I represent the petitioners in this matter before you, your next matter before you, Rosalina Melnik and her husband, Mikhail Gepnik. Your honors, the petitioners seek your review of three decisions of the Board of Immigration Appeals. They fled persecution in their native Ukraine and came to our country. As noted in the record, they are currently the parents of a minor United States citizen child with special needs. At a final hearing held before an immigration judge here in Chicago in 2014, they testified both into the harm they had suffered, which included cuts to Mrs. Melnik's hand, multiple beatings of Mr. Melnik, including beatings with a bat to the head, which caused damage to his skull, and their car was set on fire. They testified that they had sought help from the authorities without success. In fact, on one occasion after doing so, Mr. Gepnik was taken into custody and beaten as well. In 2003, they separated Mr. Gepnik, went into hiding, and came to our country with a visa in 2003. After divorcing him, Mrs. Melnik came to the United States in April 2004 with a passport she had purchased and had a visa for another person. This was discovered upon her attempted entry into the United States and she was taken into custody. She expressed her fear of return to Ukraine and was interviewed by an asylum officer who determined that her fear was credible. She was placed in removal proceedings and her hearing continued a number of times. She did submit her application for asylum with counsel in October 2004 before Judge Malloy in Philadelphia. Mr. Melnik's application was not filed until 2010. His application was referred to the immigration court because the asylum office determined it had not been filed within one year. A couple later remarried. In his brief, a respondent contends that both applications were filed after May 11, 2005, the effective date of the Real ID Act, but that is incorrect. The record clearly shows that Mrs. Melnik's application was filed in October 2004 and was therefore timely. It was filed before Judge Malloy in Philadelphia. Counsel, the procedural skirmishing really is going to be beside the point here because the husband is a derivative applicant with the wife, so to the extent that there's a timeliness problem with his application, we can get right to the merits. Thank you. I just wanted to note that the respondent had stated in his brief that both applications were filed after May 5, 2005, May 11, 2005, and that's not correct. So the Real ID Act does not apply to her application. Judge Vinicor acknowledged in his decision that the application was filed timely, her application. The question then, Your Honors, is whether the persecution that they suffered, and they clearly were harmed, Judge Vinicor said he had no reason not to believe them, is whether or not their fear of future harm and the harm they suffered was on account of one of the five reasons in the act, their race, their religion, their nationality, their membership in a particular social group, or their political opinion. Judge Vinicor concluded that they had not established that the persecution was on account of membership in a particular social group. We respectfully submit in so doing he erred, and the Board erred in not reversing that decision. Respondent contends the only common characteristics are those who have been persecuted, but that is not correct. Their position is that they were small business owners who were persecuted, who were not protected by the government. They're not claiming a particular social group of all those who have been persecuted or harmed in Ukraine, but their particular group is people that were small business owners who were not protected by the government, who were vulnerable to being exploited. Counsel, can I talk about, or ask you to talk about, rather, the connection between her getting this passport illegally from the criminals who were persecuting them, you know, apparently without the government stopping it, her fear of retribution for that action, as opposed to the potential that they would target her on her return because she was a member of this particular social group, as you're arguing. Well, she did testify to that fact as well, but she still owed them a substantial amount of money, and there had been threats to her family as well. So that is another basis for her asylum, that she had not paid these people back, and they would single her out and target her if she would return. But that's not, they're singling her out not because of her membership in a particular social group, but because she engaged in criminal activity with them and then didn't pay them back. Right. The fact that there is a mixed motive, Your Honor, does not bar that from being a factor to be considered in the overall analysis of her asylum application, or her application for withholding her CAT protection. The particular social group that she is, first and foremost, is that her and her husband were business owners that were exploited, extorted, and not protected by the government. Additionally, she said she's in danger if she goes back because of this transaction concerning the passport. Well, that answers your question. Thank you, Your Honor. About a year after the hearing happened, the hearing was in April 2014. In May 2015, Mr. Guttnick's former business partner was killed, was murdered, according to the documents that we later submitted, Dmitry Levitsky. He was killed in Ukraine. Based on that, we filed a motion to reopen with the Board of Immigration Appeals, stating that this was an additional circumstance and a changed circumstance that merited the reopening of the case and would allow for him to therefore seek asylum, even though his application was not initially filed within one year of coming to the United States. The Board denied that, and we submit did not adequately consider the documents and Mr. Guttnick's affidavit. Also, that he had a political opinion that was opposed to Russian coming in and taking over part of Ukraine and supporting those fighting in the East, opposing the government of Ukraine. The Board erred, we believe, as a matter of law, in not granting the motion to reopen and not fully considering all the evidence that had been submitted. As this Court noted in C.C., to talk more about the particular social group, just because all members of a group suffer persecution does not mean that this characteristic is the only one that links them. The shared characteristic does not disqualify an otherwise valid social group. The Board did not adequately address, as I said, the fact that Mr. Guttnick's former business partner was killed about a year after their hearing. They both testified convincingly and compellingly, truthfully, that they fear that they will be harmed and killed if they return to Ukraine. Their fear is well-founded, and we believe it's sufficient basis for them to have been granted asylum, withholding a protection of the United Nations Convention against Torture. So what exactly is your proposed social group, leaving out the aspect of persecution? Leaving out the aspect, I'm sorry? Of persecution. You can't define your social group by the shared experience of having been persecuted. So take out that. What's left? Well, as the Board has noted in other cases, a social group definition can evolve over time. So the first would be former business owners who are vulnerable and who cannot be protected by the government, either because the government is in collusion or cooperation with the persecutors or because the government simply cannot protect them. Okay. That's not how you defined your social group before the agency. Before the agency, I believe that it was defined as individuals who had been exploited or extorted. I did not represent them for that hearing. Perhaps, Your Honor, you could refresh my recollection on that. Right. The social group, as it was defined before the agency, turned exclusively on the shared experience of having been persecuted. It was defined as business owners who were extorted. That's not cognizable under Board precedent, under this Court's precedent. And you can't alter it now. So there must be some basis for recognizing that or not. And if there is not, then we simply deny the petition. I think the other aspect was people who are perceived to have wealth. I think that was also raised below. And that, I believe, is a basis that can be cognizable. Your Honor, I believe that the social group is not limited solely to their persecution. Though they have been persecuted, as the Court said in CC, just because everybody has been persecuted doesn't mean that it's not a particular social group. Our position is that it is a particular social group, business owners, who are vulnerable to being persecuted and are not protected by the government. Your Honor, I'll reserve any additional lists or additional questions. I'll reserve any time for rebuttal. Thank you. Good morning, Your Honor. Steenol Yusuf for the government. Just to jump into the conversation you were having earlier, I would say that I think the key here is that an individual for seeking asylum must establish that they suffered past harm on account of protected ground. As Your Honor, Judge Sykes was referencing, the social groups here are not cognizable under the INA. So the petition for review can be denied on that basis. Secondly, there is the nexus of finding. Here, as the agency found, these individuals were the unfortunate victims of crime. Being a victim of crime is unfortunate, however, it's not a basis for asylum. And the evidence in the record does not compel a contrary conclusion to that. The simple fact is the petitioners were preyed upon by extortionists, racketeers, what have you, and they were targeted and were ultimately the victims of crime. And on that basis, because they cannot show a nexus between a protected ground and the harm they endured, the court should deny the petition for review. Suppose they had defined themselves as people with a certain social status and education. Would that be enough? Is that a social group? I can't answer that, Your Honor. That would be up to the board to decide if that would be sufficient. Well, the Tapiero case, we pretty much held it was, didn't we? I'm having trouble seeing where the line is. Why can't one say here that the social group are small business owners as opposed to people who have been subject to extortion? Their argument seems to be that the government has said to a bunch of thugs, well, you can go after the small business owners and we won't care, we're going to look the other way. Go have some fun. That's basically the argument. They gave these thugs badges and let them extort these folks. There's a defined group in society by trade and by social strata, and this is a group that's not protected by the government. I would say, Your Honor, that firstly that is not the group that's before us. I'm sorry? That is not the group that was proposed before the agency and is not before this court. Specifically, small business owners. That was Judge Sykes' point. Now, precisely how was it defined before the agency? Before the agency, it was defined as business owners in the Ukraine who have been extorted by criminal elements and not protected by the government. Now, let's go back to my question. Suppose they had defined the group as simply small business people targeted, from whom the government has withdrawn police protection. In that case, the board would have to consider whether this group is deemed socially distinct, whether the group is defined with sufficient particularity, and whether being small business owners would constitute a common characteristic, an immutable characteristic. I would state that business owners, I don't believe, would specifically be deemed. Being a business owner is not innate or immutable characteristic similar to other cases, such as identity, gender, nationality, race. Can you point me to a case from our circuit which you would consider a flagship case for delineating what is an acceptable social group and what is not for the purposes of the statute? I believe your case in CC discusses the various considerations in defining a social group, and that's most relevant to this case based on the fact that this group itself is defined by the past. And among the board's precedent, which one do you think is the strongest in terms of being instructive? I believe the case would be the matter of MEVG and WGR that lay out the more recent, the relatively recent standard in terms of defining social, defining a group based on social distinction and particularity as well. In your view, is the law of this circuit as clear as it ought to be on this issue? Your Honor, with respect, I believe this issue is a very complicated issue, and it's something that we've all wrangled with for quite some time. It is. And I guess as more and more decisions come out, hopefully we can obtain more clarity on this issue. You think it's a case-by-case kind of a thing, but we're not going to be able to draw any more principles than the one my colleague just articulated? I believe it definitely amounts to a case-by-case. Based on the fact that, like this group here, the proposed groups can come in any variations, and so it is challenging to determine what various classifications, what characteristics would satisfy that requirement. That's helpful. Thank you. If there are no questions regarding the motions to reopen and motions to reconsider, the government will rest on the briefs on those issues, and the government respectfully requests that the court deny the petitions for review. Thank you very much for your time. Thank you. Mr. Burke. And, Judge Ruppel, to follow up on your questioning, I would also refer this court to Escobar, which I believe in C.C., the full-on vodka this court built off of Escobar. A particular social group, Your Honors, is not defined in the Act. The counsel mentioned immutable characteristic.  They could find another means of employment. They said there was no other means for them. Ukraine is still a developing economy and democracy. They were able to establish the business. However, they were extorted. The government, either in cooperation or looking the other way, let this happen to them. We believe that this is a particular social group, small business owners, who were not protected by the government or could not be protected by the government. The fact that they were persecuted, that's not what the common nexus is. It's small business owners. The fact that they, in C.C., the fact that all of them are persecuted, does not make it any less of a social group. And once again, they're not saying that they're a part of a social group, that everyone that's ever been persecuted or harmed in Ukraine. That's not the nexus. The nexus is small business owners. That's the basic social group, the immutable characteristic. They fled for their lives. They believe sincerely that they will be killed if they're returned. They beg and ask this court's granting of their petitions for review, and the case be remanded. We thank you. If there are no further questions, we thank you very much. Thank you. Our thanks to both counsel. The case is taken under advisement.